**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF ILLINOIS**
**EASTERN DIVISION**

| | | |
|---|---|---|
| Lauren B., | ) | |
| | ) | |
| Plaintiff, | ) | No. 25-cv-4866 |
| | ) | |
| v. | ) | Magistrate Judge Keri L. Holleb Hotaling |
| | ) | |
| FRANK BISIGNANO, Commissioner of | ) | |
| Social Security, | ) | |
| | ) | |
| Defendant. | ) | |

**MEMORANDUM OPINION AND ORDER**

Plaintiff Lauren B.[1] appeals the decision of the Commissioner of the Social Security

Administration ("Commissioner") ("SSA") denying her disability benefits. The parties have filed

cross motions for summary judgment. As detailed below, Plaintiff's motion for summary judgment

[Dkt. 16] is DENIED and Defendant's motion for summary judgment [Dkt. 19] is GRANTED.

The final decision of the Commissioner is affirmed.

### 1.     Procedural History

On July 19, 2021, Plaintiff protectively filed an application for disability and disability

insurance benefits, alleging disability beginning July 7, 2021. [Administrative Record ("R.") 23.]

The claim was denied initially and on reconsideration. *Id*. On September 7, 2023, after an

Administrative Hearing, an Administrative Law Judge ("ALJ") found that Plaintiff was not

disabled. [R. 23-34.] The Appeals Council denied review on October 8, 2024 [R. 8], rendering the

ALJ's September 7, 2023 decision the final decision of the Commissioner. 20 C.F.R. §404.981.

---

[1]     In accordance with Northern District of Illinois Internal Operating Procedure 22, the Court refers to Plaintiff only
by her first name and the first initial of her last name(s).

On May 2, 2025, Plaintiff filed the instant action seeking review of the Commissioner's decision. [Dkt. 1.]

### 2.     The ALJ's Decision

In his September 7, 2023 decision, the ALJ analyzed Plaintiff's claim following the SSA's usual five-step evaluation process to determine whether Plaintiff was disabled. [R. 23-34.] At Step One, the ALJ found Plaintiff had not engaged in substantial gainful activity since the alleged onset date. [R. 25.] At Step Two, the ALJ found Plaintiff had the severe impairments of spinal arthropathies, migraines, vertigo, and depression. [R. 26.] The ALJ found all other impairments non-severe either because they had been responsive to treatment, cause no more than minimal limitations, and/or have not or are not expected to last at a severe level for a continuous period of twelve (12) months. *Id.* At Step Three, the ALJ determined Plaintiff did not have an impairment or combination of impairments that met or medically equaled the severity of one of the listed impairments in 20 C.F.R. Part 404, Subpart P, App'x 1 (20 CFR 404.1520(d), 404.1525 and 404.1526). *Id*. In determining Plaintiff's mental impairments, the ALJ also analyzed the so-called Paragraph B and Paragraph C criteria for assessing mental impairments. The ALJ found Plaintiff had a moderate limitation in all functional areas. [R. 27.] The ALJ further found the evidence of record failed to establish the presence of Paragraph C criteria. *Id*.

Before Step Four, the ALJ found Plaintiff had the residual functional capacity ("RFC") to work at all exertional levels with the following limitations:

> she can never balance or climb ladders, ropes or scaffolds; she can occasionally climb ramps and stairs, and she can occasionally stoop or crouch; she is not capable of rapid, repetitive neck rotation, flexion, or extension; she should avoid concentrated exposure to temperature or humidity extremes, or pulmonary irritants such as fumes, odors, dusts, gases, and poor ventilation; she should not be exposed to excessive vibration, or to bright, flashing lights, or loud noises which exceed levels generally encountered in office-type work; she is limited to working in non-hazardous environments, i.e., no driving at work, operating moving machinery,

working on ladders or at unprotected heights, and she should avoid concentrated exposure to unguarded hazardous machinery; she can understand, remember, and carry out simple instructions and use judgment to make simple work-related decisions; she can tolerate occasional interactions with supervisors and coworkers; she can tolerate no interactions with the general public; she cannot perform work requiring a specific production rate such as assembly line work; and she can deal with occasional changes in a routine work setting.

[R. 28.]

At Step Four, the ALJ concluded Plaintiff had no past relevant work. [R. 32.] At Step Five, after considering the Plaintiff's age, education, work experience and RFC, the ALJ found Plaintiff capable of performing other jobs existing in significant numbers in the national economy. *Id*. Specifically, the ALJ determined Plaintiff would be able to perform the requirements of dishwasher (DOT# 318.687-010, SVP 2, medium), office helper (DOT# 239.567-010, SVP 2, light), and mail clerk (DOT# 209.687-026, SVP 2, light). [R. 33.] Accordingly, the ALJ found Plaintiff was not disabled from the application date through the date of the decision. *Id*.

### 3.      Social Security Regulations and Standard of Review

The Social Security Act requires all applicants to prove they are disabled as of their date last insured to be eligible for disability insurance benefits. 20 C.F.R. § 404.131; *Schloesser v. Berryhill*, 870 F.3d 712, 717 (7th Cir. 2017). In disability insurance benefits cases, a court's scope of review is limited to deciding whether the final decision of the Commissioner of Social Security is based upon substantial evidence and the proper legal criteria. *Stephens v. Berryhill*, 888 F.3d 323, 327 (7th Cir. 2018); *Hess v. O'Malley*, 92 F.4th 671, 676 (7th Cir. 2024); *see also* 42 U.S.C. § 405(g). Substantial evidence is "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Biestek v. Berryhill*, 139 S. Ct. 1148, 1154, 203 L. Ed. 2d 504 (2019) (citations omitted). Even where "reasonable minds could differ" or an alternative position is also supported by substantial evidence, the ALJ's judgment must be affirmed if supported by substantial evidence. *Elder v. Astrue*, 529 F.3d 408, 413 (7th Cir. 2008). This "lax" standard is

satisfied when the ALJ "minimally articulate[s] his or her justification for rejecting or accepting specific evidence of a disability." *Berger v. Astrue*, 516 F.3d 539, 545 (7th Cir. 2008) (internal signals omitted) (citing *Rice v. Barnhart*, 384 F.3d 363, 371 (7th Cir. 2004)). Although the Court reviews the ALJ's decision deferentially, the ALJ must nevertheless "build an accurate and logical bridge" between the evidence and their conclusion." *Hess*, 92 F.4th at 676; *Lincoln v. Bisignano*, No. 24-cv-2668, 2026 WL 1097737, at *2 (7th Cir. 2026). Finally, while reviewing a commissioner's decision, the court does not second-guess the ALJ's judgment – the Court may not "substitute [its] own judgment for that of the Commissioner [,] reconsider facts, reweigh the evidence, resolve conflicts in the evidence, or decide questions of credibility." *Fitschen v. Kijakazi*, 86 F.4th 797, 802 (7th Cir. 2023).

### 4.    Discussion

Plaintiff contends that the ALJ erred by (1) not fully accounting for limitations from migraines in the RFC assessment, (2) not considering the effects of Plaintiff's combination of impairments in evaluating the RFC assessment, and (3) not properly evaluating the opinion of Dr. Rhyne, a treating source. The Court disagrees.

### a.  The ALJ Properly Accounted for Limitations from Migraines in the RFC

Plaintiff claims the ALJ "failed to include all limitations resulting from migraines in the residual functional capacity assessment" as the ALJ did not address off-task time or limitations related to bright lights in the RFC. [Dkt. 16 at 2-3.] Contrary to the decision in *Moon v. Colvin*, 763 F.3d 718, 721 (7th Cir. 2014), the case Plaintiff cites, the ALJ here built a logical bridge between the evidence related to Plaintiff's migraines and the ultimate RFC.

As an initial matter, the Court finds the ALJ's RFC is supported by substantial evidence. *Biestek*, 139 S. Ct. at 1154. The ALJ found Plaintiff's migraines and vertigo to be severe

4

impairments. [R. 26.] In determining the parameters of the RFC, the ALJ discussed Plaintiff's history of migraines and vertigo. [R. 29-31.] The ALJ detailed sections of Plaintiff's medical records in his decision, noting (i) Plaintiff complained of worsening symptoms in July 2021, (ii) Plaintiff's August 2021 examination found her to have a mild balance impairment and mild vestibulo-ocular reflex impairment, (iii) Plaintiff's treatment plan recommended physical therapy, (iv) Plaintiff's treatment also included Botox injections and oral medications, and (v) Plaintiff reported improvement with ocular therapy and Botox in February 2022. [R. 29.] The ALJ explained that while the record clearly shows evidence of "sporadic episodes of persisting headaches and dizziness," the record does not support the alleged frequency or intensity. *Id*.

Throughout the Administrative Hearing, Plaintiff also testified that she started experiencing hemiplegic migraines beginning in early 2023, a type of migraine where the left side of Plaintiff's body feels numb, droopy, and weak according to Plaintiff. [R. 52.]. Plaintiff had only been experiencing these symptoms for approximately four to five months at the time of the hearing. *Id*. While the ALJ did not label these symptoms as being caused by hemiplegic migraines, the ALJ discussed these 2023 symptoms, and the treatment Plaintiff sought since these symptoms manifested. [R. 29.] Nothing more is required.

Moreover, the ALJ specifically prescribed, among other limitations, that Plaintiff have "no exposure to excessive vibration, or to bright, flashing lights, or loud noises which exceed levels generally encountered in office-type work" due to her history of "pain, dizziness, and migraine headaches." [R. 31.] While the ALJ did not list it out in his decision, Plaintiff also testified to a non-exhaustive, but lengthy, list of triggers for her migraines, including heat, light, going outside, stress, moving her head around, reading, thinking, and allergies. [R. 50.] Many of these are accounted for in the RFC. [R. 31.] It is clear the ALJ declined to provide additional limitations in

5

the RFC because he found Plaintiff's "allegations of debilitating symptoms [] not entirely consistent with the evidence." *Id*. Specifically, the ALJ noted Plaintiff's treatment seems to help improve or at least control Plaintiff's symptoms, Plaintiff's description of her daily activities was not consistent with the symptoms and limitations she complained about, and physical and mental exams continued to indicate benign findings. [R. 31-32]; *see also Carmen O-A v. Dudek*, No. 23-cv-7842, 2025 WL 588598, at *3 (N.D. Ill. Feb. 24, 2025) ("Plaintiff's argument assumes her allegations of pain enjoyed a presumption of truthfulness that the ALJ had to rebut. But Plaintiffs has the burden of proof to demonstrate she was disabled, and there is no presumption of truthfulness."). The ALJ even provided Plaintiff's counsel with an opportunity to clarify and supplement the record at the Administrative Hearing, flagging for counsel that the record lacked supporting medical records from 2022 and asking counsel to point to evidence in the record that may corroborate Plaintiff's alleged limitations for the duration of 2022. [R. 54-57.] Counsel was unable to direct the ALJ to any additional evidence. *Id*. The Court finds the ALJ met the very lax standard of building a logical and accurate bridge between the evidence of record and the RFC he ultimately issued. *Berger*, 516 F.3d at 545.

Despite the substantial evidence to support the RFC, Plaintiff argues the RFC is not sufficient because it lacks *additional* limitations. Namely, Plaintiff contends that while the RFC "appears to account for migraines by eliminating triggers," the proper analysis would require a finding on the frequency of Plaintiff's migraines and limitations for off-task time Plaintiff may require to try and relieve migraines when they do occur. [Dkt. 16 at 4.] Plaintiff cites to medical records from April and May 2023 to highlight Plaintiff's migraines were not improving or stable, but "at best a fluctuating condition," additionally claiming the ALJ's decision avoids discussing this favorable evidence. [Dkt. 16 at 5-6.] These records address the period when Plaintiff testified

6

that she began to experience hemiplegic migraines in 2023. [R. 52.] While an ALJ need not discuss every piece of evidence, the ALJ did, as noted above, devote a section of his decision to discussing Plaintiff's symptoms and treatment in 2023 and appears to have considered the evidence of record holistically. *See supra* pp. 5-6; *Warnell v. O'Malley*, 97 F.4th 1050, 1053 (7th Cir. 2024). For example, Plaintiff also testified that she was experiencing a hemiplegic migraine during the hearing. *Id*. Yet, as the ALJ noted during the hearing, Plaintiff "seemed very able to testify today, despite saying that she was in the midst of a hemiplegic migraine…I did not note her to ask that any questions be repeated. And I didn't see her pausing or anything in her responses." [R. 58.] The ALJ made note of this in his decision as well, stating that Plaintiff "testified very effectively." [R. 30.]

As further evidence that the ALJ should have included off-time limitations in the RFC, Plaintiff cites to medical records where Plaintiff relayed she would rest when her headaches are worse [R. 1388] and Dr. Rhyne's physical RFC assessments from February and September 2022 where Dr. Rhyne opined Plaintiff would need to take unscheduled breaks and lie down or sit quietly during migraine flare-ups [R. 836-837, 881-882]. [Dkt. 16 at 4.] However, the ALJ found Dr. Rhyne's opinions unpersuasive, in part, because the "record lacks Plaintiff's ongoing treatment and examination records from Dr. Rhyne covering the period relevant to these [February and September 2022] opinions." [R. 31.] As discussed above, the ALJ raised this issue at the Administrative Hearing, but counsel was unable then or now to point to evidence in the record that supports Dr. Rhyne's 2022 opinions. [R. 31, 54-57.] Thus, the ALJ's decision to decline to give weight to Plaintiff's treating physician's opinion, and further limit Plaintiff's RFC, especially where the ALJ explained that the opinion was unsupported and inconsistent with the record, was warranted. *Burmester v. Berryhill*, 920 F.3d 507, 512 (7th Cir. 2019) ("The exclusion of the

7

treating physicians was not unsupported in the ALJ opinion...the ALJ provided detailed reasons for his finding that the opinions…were not supported by the record."). In contrast, the ALJ found the state agency medical consultants' opinions mostly persuasive which found Plaintiff's "residual symptoms from back pain, migraines, and vertigo were generally stable with treatment". [R. 30.]

Plaintiff also claims the RFC is insufficient as the ALJ restricted Plaintiff from exposure to "bright, flashing lights" whereas the records indicate Plaintiff's sensitivity is only to bright lights. [Dkt. 16 at 7-8.] Plaintiff contends the "inclusion of flashing lights, rather than just bright lights, effectively nullifies any relevant limitation" as "the ALJ did not ask the vocational expert whether a restriction from working in brightly lit areas, or areas with fluorescent lighting, would preclude work." *Id*. While the ALJ only questioned the vocational expert ("VE") about a "bright, flashing lights" limitation [R. 61-62], Plaintiff's counsel had an opportunity to cross examine the VE and ask whether a limitation to only "bright lights" would change the VE's testimony. Plaintiff's counsel did not raise this issue at the hearing, instead counsel only confirmed the VE did not consider any factors or limitations beyond those identified by the ALJ. [R. 64.] While the record does reflect Plaintiff had sensitivity to bright lights [*see, e.g.,* R. 423, 449, 628, 783, 836, 881, 1096, 1227], Plaintiff's records also indicate watching television and going to thrift shops have helped improve her headaches (though no treatment or activity has eliminated her headaches) [R.1387]. As the ALJ explained, the ALJ did not find Plaintiff's alleged symptoms entirely consistent with the evidence. [R. 31.] Despite this, the ALJ accommodated Plaintiff's light sensitivity in the RFC by limiting Plaintiff to "no exposure to…bright, flashing lights…generally encountered in office-type work." [R. 31]; *see also Amy T. v. Kijakazi*, No. 22-cv-4391, 2023 WL 7386081, at *5 (N.D. Ill. Nov. 8, 2023) (finding the ALJ appropriately incorporated a limitation in the RFC tailored to Plaintiff's migraines where Plaintiff testified about lighting at work as a trigger

and the ALJ restricted Plaintiff from environments with bright, flashing lights generally encountered in office-type environments); *Kernstein v. Berryhill*, No. 18-cv-226, 2019 WL 1950413, at *4-5 (N.D. Ind. May 2, 2019) (finding "the ALJ reasonably restricted Plaintiff to occasional work around very bright flashing lights" where Plaintiff mentioned light as a migraine trigger and Plaintiff reported symptoms where generally controlled). Additionally, as the Commissioner notes, "the Dictionary of Occupational Titles ("DOT") does not suggest any of the jobs listed at step five required exposure to bright lights." [Dkt. 19 at 11, *citing* DOT: Dishwasher (318.687-010), 1991 WL 672755; Officer Helper (239.567-010), 1991 WL 672232; Mail Clerk (209.687-026), 1991 WL 671813.] Thus, even if the Court had found the ALJ erred by limiting Plaintiff from "bright, flashing lights" as opposed to "bright lights", such error would be harmless as the jobs the ALJ ultimately found Plaintiff capable of performing do not require exposure to either bright or bright and flashing lights. *Spiva v. Astrue*, 628 F.3d 346, 353 (7th Cir. 2010) ("If it is predictable with great confidence that the agency will reinstate its decision on remand because the decision is overwhelmingly supported by the record…then remanding is a waste of time.")

For the foregoing reasons, the Court finds the ALJ's RFC was supported by substantial evidence, the ALJ provided a logical and accurate bridge between the evidence and his RFC, and Plaintiff failed to meet her evidentiary burden to show the RFC determination is either incorrect or insufficient. *Morales v. O'Malley*, 103 F.4th 469, 470-471 (7th Cir. 2024).

**b. The ALJ was not Required to *Discuss* the Combination of Impairments in his Decision**

Plaintiff contends the ALJ erred in his RFC assessment as he "did not consider the effects of Plaintiff's combination of impairments[.]" [Dkt. 16 at 8-12.] While an ALJ is required to consider the combination of a claimant's impairments, the regulations do not require an ALJ to

articulate how the ALJ considered the combination of impairments. 20 C.F.R. § 404.1523(c); 20 C.F.R. § 404.1545(a)(2); 42 U.S.C. 423(d)(2)(B). The Seventh Circuit has explicitly held that sections of the social security regulations which require an ALJ to *consider* evidence do not equate to a requirement to *discuss* the same. As the Commissioner highlights [Dkt. 19 at 11-13], 20 C.F.R. § 404.1520(a)(3) and 20 C.F.R. 404.1545(a)(1) require an ALJ to consider all evidence of record. Despite this regulation, the Seventh Circuit has clarified an ALJ "need not address every piece or category of evidence[.]" *Warnell*, 97 F.4th at 1053. Applying the same rationale to the relevant regulations here (20 C.F.R. § 404.1523(c), 20 C.F.R. § 404.1545(a)(2), 42 U.S.C. 423(d)(2)(B)), this Court will not extend the requirements of the regulations from considering the combination of a claimant's impairments to a requirement to discuss the same in its decision. Nonetheless, the ALJ did consider Plaintiff's symptoms in the aggregate, ruling that neither Plaintiff's impairments nor her combination of impairments meets the requirements of one of the listed impairments. [R. 26]; *Getch v. Astrue*, 539 F.3d 473, 483 (7th Cir. 2008) (finding the ALJ properly considered Plaintiff's combination of impairments, in part, where the ALJ ruled Plaintiff's "impairments were not severe enough, "either singly or in combination," to equal one of the listed impairments.")

Plaintiff claims the ALJ failed to consider the combined impact of her impairments as the ALJ did not discuss the cumulative impact of Plaintiff's impairments and whether such cumulative impact may result in additional limitations. However, Plaintiff's claims that consideration of her combined impairments may have revealed further functional limitations in her ability to sustain competitive work is mere speculation. [Dkt. 16 at 8-12.] Plaintiff cites no medical records or medical opinions to support this proposition; the only evidence Plaintiff cites is Plaintiff's function report, dated November 3, 2021, where Plaintiff reported that her bipolar disorder[2], migraines, and

---

[2] The ALJ did not find Plaintiff's bipolar disorder to be a severe impairment. [R. 26.]

dizziness impact each other and make her symptoms worse. [Dkt. 16 at 9; R. 277.] As the ALJ noted in his decision, Plaintiff began reporting improvement with treatment in February 2022. [R. 29.] Plaintiff points to no evidence after this date which supports Plaintiff's claims that the combination of her impairments requires additional limitations. The facts here are distinguishable from the decision in *Patchett v. Kijakazi*, No. 21-cv-45, 2022 WL 2982167, at *4-5 (N.D. Ind. Jul. 28, 2022) where the Court found the ALJ erred in analyzing Plaintiff's migraines, in part, as the ALJ did not consider the combined effects of Plaintiff's impairments. Unlike the record here, the record in *Patchett* included treatment notes which "linked [Plaintiff's] anxiety to her headaches" and other treatment notes which indicated Plaintiff's "mental health symptoms worsen her pain, and that her anxiety and panic attack increases occurred simultaneously with an increase in migraines." *Patchett*, 2022 WL 2982167, at *4-5.

Similarly, Plaintiff claims the ALJ erred by not discussing Plaintiff's obesity, or the impact of Plaintiff's obesity on her other impairments. [Dkt. 16 at 11-12.] While Plaintiff's BMI included in the record indicates Plaintiff was obese [R. 1444], Plaintiff does not cite any evidence in the record that indicates Plaintiff's obesity resulted in additional limitations requiring a sedentary position. Instead, Plaintiff falls back again on a speculative argument that the "combination of impairments could reasonably result in limitations in standing, walking, and lifting[.]" [Dkt. 16 at 12.] As the Commissioner notes, Plaintiff's examination findings indicate the opposite – Plaintiff had relatively normal strength, normal ability to walk, full range of motion, and intact sensation and coordination. [Dkt. 19 at 13, *referencing* R. 829-834, 912, 939, 994, 1250, 1378, 1414, 1448.] "An ALJ's failure to explicitly consider an applicant's obesity is harmless if the applicant did not explain how her obesity hampers her ability to work." *Stepp v. Colvin*, 795 F.3d 711, 720 (7th Cir. 2015). Consequently, the Court finds the ALJ did not err by not further discussing the combination

of Plaintiff's impairments where the evidence of record does not indicate the combination of impairments supported additional limitations.

### c. The ALJ Properly Evaluated Dr. Ryne's Opinion

Finally, Plaintiff claims the ALJ did not properly evaluate Dr. Rhyne's opinion, which would require additional limitations than those in the RFC. [Dkt. 16 at 12-14.] An ALJ is required to articulate how persuasive he or she found the medical opinions and evaluate the supportability and consistency (among other factors) of the opinion with the record. 20 C.F.R. § 404.1520c(b)(2). Supportability refers to "the objective medical evidence and supporting explanations presented by a medical source" to support their opinion. 20 C.F.R. § 404.1520c(c)(1). Consistency refers to the consistency of a "medical opinion(s)…with the evidence from other medical sources and nonmedical sources in the claim." 20 C.F.R. § 404.1520c(c)(2). The Court finds the ALJ properly evaluated the persuasiveness of Dr. Rhyne's opinion and adequately discussed the lack of supportability and consistency of Dr. Rhyne's opinion with the record.

While Dr. Rhyne was one of Plaintiff's treating physicians, the administrative record only includes two physical RFC assessments from Dr. Rhyne for the 2022 calendar year. [R. 31.] These assessments included aggressive findings such as opining Plaintiff was incapable of even "low stress" jobs, Plaintiff will be precluded from performing even basic work activities when she has a headache, estimating Plaintiff will need to be absent from work about three days per month, and that Plaintiff will need to take unscheduled breaks during the workday. [R. 836-837, 881-882.] The ALJ did not find Dr. Rhyne's opinions persuasive. [R. 31.] As the ALJ explained in his decision, Dr. Rhyne's opinions lack support as Dr. Rhyne's treatment notes throughout this period were never submitted to the record even though the ALJ raised this gap in evidence at the Administrative Hearing and offered Plaintiff's counsel an opportunity to submit the records after

12

the hearing. [R. 31, 54-57.] The ALJ also noted that Dr. Rhyne's opinions were inconsistent with the medical record as other evidence indicates Plaintiff was responsive to treatment and that her symptoms were improving. [R. 31.] Lastly, the ALJ flagged that the issue of whether an individual is disabled is an issue reserved to the Commissioner. *Id*. The ALJ's evaluation of Dr. Rhyne's opinion satisfies the requirements of the relevant regulations.

Plaintiff argues that the ALJ misstates the record by claiming that Plaintiff's symptoms were stable and improving. [Dkt. 16 at 13.] However, Plaintiff's medical records following the start of her Botox treatments indicate Plaintiff's symptoms were controlled. [R. 995, 1087, 1227, 1387.] At no point does the ALJ claim Plaintiff's symptoms had subsided or that her treatment had resulted in complete success. As the ALJ notes, Plaintiff presented with more symptoms in 2023. [R. 29.] These *new* symptoms, as Plaintiff described, began in 2023. [R. 58.] Dr. Rhyne's 2022 assessments were completed prior to these symptoms manifesting and appropriately cannot be used to corroborate Plaintiff's 2022 symptoms or Dr. Rhyne's 2022 assessment.

Plaintiff also claims the ALJ erred by suggesting Dr. Rhyne opined on an issue reserved to the Commissioner. [Dkt. 16 at 14.] Plaintiff contends that an opinion on whether a claimant will miss work is not an issue that is reserved for the Commissioner. *Id*. However, as the Commissioner highlights [Dkt. 19 at 7-9], Dr. Rhyne's assessments included opinions on whether Plaintiff's headaches would preclude her from basic work activities. [R. 837, 882] This opinion falls more squarely into a category that *is* reserved to the Commissioner. 20 C.F.R. §404.1520b(c)(3)(i) (identifying "statements that you are or are not disabled, blind, able to work, or able to perform regular or continuing work" as neither valuable nor persuasive as they address issues reserved to the Commissioner). While the ALJ could have more specifically noted which section of Dr. Rhyne's opinion encroached on the Commissioner's duties, the ALJ appropriately noted that at

least some part of Dr. Rhyne's opinion reached beyond its scope. [R. 31.] As noted above, the Court finds the ALJ properly evaluated Dr. Rhyne's opinion and will not remand on this basis.

### 5. Conclusion

For the foregoing reasons, the Court declines to remand this matter. Plaintiff's motion for summary judgment [Dkt. 16] is DENIED and Defendant's motion for summary judgment [Dkt. 19] is GRANTED. The final decision of the Commissioner is affirmed.

**ENTERED: May 11, 2026**

Hon. Keri L. Holleb Hotaling,
United States Magistrate Judge

14